█ In the Matter of the Claim of ANDREW K. PALMER, Respondent, v STATE UNIVERSITY OF NEW YORK UPSTATE MEDICAL UNIVERSITY et al., Appellants, and RESEARCH FOUNDATION OF NEW YORK et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent. [787 NYS2d 489]—

Rose, J. Appeal from a decision of the Workers' Compensation Board, filed January 17, 2003, which ruled, inter alia, that claimant sustained a causally related occupational disease and awarded workers' compensation benefits.

Claimant, an orthopedic hand surgeon who provided services as a clinical professor at the State University of New York Upstate Medical University, developed cervical radiculopathy and degenerative disc disease as a result of the strain involved in performing hand surgery. When he filed for workers' compensation benefits, the University and its carrier, as well as the Research Foundation of New York, which paid claimant a salary, and its carrier, controverted the claim. The Workers' Compensation Board found that claimant was a dual employee of both the University and the Foundation, and that he suffered from an occupational disease, prompting this appeal by the University and its carrier.

Initially, "[w]e note that '[t]he finding of dual employment is a factual determination which lies with the [B]oard, and an award can be made against either employer, or both' " (*Matter of Ayers v Hakes,* 260 AD2d 975, 977 [1999], quoting *Matter of Thomas v Diamond,* 33 AD2d 602, 602 [1969]; *see Matter of Ziegler v Fillmore Car Serv.,* 83 AD2d 692, 693 [1981], *lv denied* 54 NY2d 609 [1981]). Here, claimant held an unpaid faculty position at the University while he was paid by the Foundation, which in turn received its funds from the Orthopedic. Medical Services Group (hereinafter OMSG), an orthopedic practice group created by the University and through which claimant also conducted a private practice. The members of OMSG served as the University's Department of Orthopedic Surgery faculty and, while the University paid a salary to some of these faculty members, others, such as claimant, were paid by the Foundation instead. Although claimant was characterized by the University as a "volunteer" member of its faculty, his membership in OMSG was dependent on his continued status as a faculty member, and the University's officials had the power to fire him. The evidence demonstrates that the University established both the Foundation and OMSG as a means of, among other things, recruiting and paying "volunteer" faculty. Given that the University created this web of relationships to enable it to receive the benefit of claimant's services, we find that there is substantial evidence to support the Board's determination that he was a dual employee of the University and the Foundation.

Next, to be entitled to compensation based on an occupational disease, claimant must establish a recognizable link between his condition and some distinctive feature of his occupation (*see Matter of Benjamin v International Bus. Machs.,* 293 AD2d 889, 890 [2002]; *Matter of McDonald v Danforth,* 286 AD2d 845, 846-847 [2001]). The required distinctive feature here is described by his orthopedic surgeon, who opined that "[t]he specific incit-

ing factors are the head position required during extensive hand surgery and the use of magnification with the extra strain on the claimant's neck and shoulder region." The University and its carrier do not dispute that the physical position in which claimant was required to perform hand surgery aggravated his preexisting condition. Nor do they suggest that his equipment could have been reconfigured to eliminate the hazard (*see Matter of Currier v Manpower Inc. of N.Y.*, 280 AD2d 790, 791 [2001]). Instead, they contend that claimant is not entitled to benefits because he failed to prove that neck injuries are a recognized hazard of surgeons. We disagree. While the hazard that causes an employee's disability must "distinguish[ ] it from the usual run of occupations and [be] in excess of the hazard attending employment in general" (*Matter of Bates v Marine Midland Bank*, 256 AD2d 948, 948-949 [1998]), we have not required that the characteristic of the employment be generally recognized as inherently hazardous (*see e.g. Matter of Aldrich v St. Joseph's Hosp.*, 305 AD2d 908, 910 [2003]).

Mercure, J.P., Crew III, Spain and Kane, JJ., concur. Ordered that the decision is affirmed, without costs.